UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MARC CAMILLE,

        *Plaintiff*,

        *v*.

NEWYORK–PRESBYTERIAN HOSPITAL,

        *Defendant*.

------------------------------------------------------------------------x

**16 CV 4192**

**COMPLAINT**

      Plaintiff Marc Camille, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendant NewYork–Presbyterian Hospital as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Marc Camille ("Plaintiff" or "Mr. Camille") seeks damages and costs against Defendant NewYork–Presbyterian Hospital ("Defendant" or the "Hospital") for (i) race (Black) and national origin (Haitian) discrimination for subjecting him to a hostile work environment and, (ii) terminating his employment due to his race, national origin, and in retaliation for complaints of such discrimination. Defendant's conduct violates the Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, and New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code §§ 8-101 to 14-151.

2. Mr. Camille further alleges that the Hospital unlawfully inquired about an arrest and terminated his employment by reason of that arrest in violation of NYCHRL, N.Y. Admin. Code § 8-107(11) and New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law Art. 15 §§ 290 – 301.

3. Mr. Camille further alleges that the Hospital interfered with his rights under the the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654, by not providing him with

notice of his FMLA rights—which caused him to forego taking FMLA leave—and retaliated against him for requesting leave by terminating his employment.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendants violated Plaintiff's rights under Section 1981 and the FMLA.

5. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims brought under NYCHRL and NYSHRL, as the federal claims arise from the same set of operative facts as the state and local claims and form part of the same case or controversy.

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

7. Plaintiff respectfully requests a trial before a jury.

## PARTIES

8. Plaintiff Marc Camille, at all times relevant hereto, was and is a resident of Kings County in the State of New York.

9. Upon information and belief, at all times relevant hereto, Defendant NewYork-Presbyterian Hospital was and is a corporation organized under the laws of the State of New York with a location at 525 East 68th Street, New York, New York 10021.

## STATEMENT OF FACTS

10. Mr. Camille immigrated to the United States in 1998 from Haiti.

11. After serving in the U.S. Army for two (2) years, Mr. Camille became a licensed Security Guard, pursuant to the New York State Security Guard Act, Art. 7-A, General Business Law.

12. On or about March 7, 2007, the Hospital hired Mr. Camille as a "Security Officer," which is a private security guard position. At no time was Mr. Camille a police officer or peace officer.

13. Mr. Camille excelled at the Security Officer position, earning various raises.

14. In and around August 2008, during Mr. Camille's second year of employment with the Hospital, he graduated from Monroe College with a bachelor's degree in Business and Health Service Administration with the goal of furthering his career at the Hospital.

15. Mr. Camille's growth with the Hospital, however, was limited by the Hospital's deeply disturbing and systemic racism.

16. In 2010, Mark Warren, the Hospital's Security Manager, denied Mr. Camille's request for training sessions, which were regularly granted to non-Black and non-Haitian Security Officers.

17. Mr. Camille was qualified for the trainings; however, Mr. Warren told Mr. Camille that he was not fit for any other positions besides a Security Officer because "people like you cannot be trusted," implying that Mr. Camille's race and national origin disqualified him from higher positions.

18. In and around April 2011, Mr. Camille applied to be a Security Director, and, with four (4) years of experience, was qualified for the new role.

19. The Hospital's Human Resources Director, Rachel Negron, warned Mr. Camille that he was not fit for the position because "it required a lot of responsibility."

3

20. In the Spring of 2012, Mr. Camille witnessed Mr. Warren start a physical altercation with a patient.

21. Shortly thereafter, Mr. Warren, who was a former police officer for the New York Police Department, told Mr. Camille that "the beating felt like the good old days in my NYPD uniform."

22. The next day, Mr. Warren referred to his fight with the patient as a "nigger—Rodney King beatdown."

23. Mr. Camille was extremely offended by Mr. Warren's remarks.

24. In and around February 2013, Mr. Camille complained to the Hospital's Human Resources department about the Hospital's discrimination with respect to denying him his requests for a promotion.

25. The Hospital did nothing to address his complaints.

26. Afterward, Tony Megdalia, a white security guard, and Mr. Warren retaliated against Mr. Camille.

27. They assigned him to the worst security posts (such as working outdoors in the winter cold), issued him false negative performance evaluations, referred to him by racial epithets, and denied him opportunities to advance.

28. In and around March 2013, Mr. Megdalia issued Mr. Camille a specious final written warning for "opening the door for a patient into the facility."

29. In support of Mr. Camille's receiving a final warning for his first "offense," Sergeant Isaac Pack (white) alleged that Mr. Camille aggressively approached a co-worker a year prior in 2012.

4

30. Some time after this document was shown to Mr. Camille, Mr. Pack told Mr. Camille that he falsified the document because he "does not like niggers."

31. In and around Summer 2013, Sergeant Elba Rodriguez issued Mr. Camille a negative performance review.

32. Shortly thereafter, Ms. Rodriguez admitted to issuing Mr. Camille a negative evaluation solely because of pressure from Mr. Megdalia and Mr. Warren.

33. Mr. Camille believed the false evaluation was created in retaliation for his complaints and to discourage and prevent him from earning a management position.

34. In and around Summer 2014, Mr. Camille applied for another supervisory position. Yet again, Mr. Camille was denied the position with the excuse that he lacked experience.

35. At the same time, however, the Hospital promoted four (4) employees, two (2) white, known only to Mr. Camille as "Krejci" and "Vieira," and two (2) Hispanic, known only to Mr. Camille as "Cruz" and "Muriel," to supervisory positions, even though they had less experience than Mr. Camille.

36. After Mr. Camille complained, Mr. Warren told him, "You will never be promoted for as long as I'm here because I hate your kind of people," strongly implying an animus against Mr. Camille's race and national origin.

37. Throughout 2015, Mr. Pack's discriminatory comments became more severe and pervasive. He only referred to Mr. Camille as "the Haitian with the accent" and saying "Who are you to question me? Nigger fall back" in response to Mr. Camille's work-related questions.

5

38. In and around August 2015, Muriel saw Mr. Camille at his post and harassed him without reason, yelling racial remarks such as "I hate people like you fucking Haitian. Do you know, nigger, how long I was looking for you?"

39. Muriel then issued Mr. Camille a false write-up for not being at his post.

40. Further, on or about September 8, 2015, Mr. Camille was exposed to Hepatitis B and C along with the human immunodeficiency virus ("HIV") after restraining a combative bleeding patient. Mr. Camille had an open wound on his finger that was exposed to the patient's blood through a slit in Mr. Camille's glove.

41. Concerned for his safety, Mr. Camille immediately informed Mr. Jackson of what had just occurred.

42. Mr. Jackson, showing no concern, simply directed Mr. Camille to change his uniform and report back to his post in the combative patient's room.

43. Mr. Camille, troubled by the events that had just unfolded and Mr. Jackson's reaction, did as he was told, in contrast to the Hospital's policy for such an incident, which requires the employee to be taken to the emergency room immediately and the immediate submission of an incident report.

44. Afterward, if the patient is indeed infected with Hepatitis B or C or HIV, the employee must start treatment right away and continue to be tested every month for a period of six (6) months.

45. None of these steps were followed for Mr. Camille.

46. Mr. Camille continuously attempted to see the Hospital's doctors to be medically cleared, but Mr. Jackson ignored his requests.

47. Mr. Camille went to the Workforce Health Safety Department to retrieve the medical history of the infected patient.

48. Once Mr. Jackson found out about Mr. Camille's efforts, he falsely warned Mr. Camille that retrieving that information was a violation of patient privacy. Mr. Camille reminded him that the health and safety procedure was to collect the patient's information given his exposure, to which Mr. Jackson replied that he "did not care."

49. In October 2015, Mr. Camille went to his family doctor for an evaluation and tested positive for Hepatitis B and C.

50. On or about November 10, 2015, two (2) months after the incident, Mr. Jackson gave Mr. Camille the employee incident report to fill out, upon learning of Mr. Camille's medical results.

51. In and around January 2016, Mr. Camille's mother had a stroke. She become disabled and unable to care for herself. She cannot bathe or walk without assistance and suffers from memory problems. She is dependent on Mr. Camille as her primary caretaker and provider.

52. Mr. Camille informed Mr. Jackson that, as he was his mother's primary caretaker, needed to take leave to care for her.

53. Mr. Jackson did not speak to Mr. Camille about his rights under the FMLA to care for his mother and, instead, viciously responded, "Nigger hurry up and go back to your post before I start to pen to paper," implying that he was going to write up Mr. Camille for requesting time off to care for a parent with a serious health condition.

54. The Hospital failed to provide Mr. Camille with any notice of his rights under the FMLA.

55. As a result of the Hospital's conduct, Mr. Camille did not, and could not, take any leave.

56. In and around February 2016, Mr. Camille's grandmother passed away. Mr. Camille requested to use his accrued paid time off for bereavement.

57. Mr. Jackson responded, "No nigger, use your vacation for your people on the island." The Hospital did not allow Mr. Camille bereavement leave.

58. In contrast, a few days later, after Muriel's sister passed away, Mr. Jackson made cards for Muriel.

59. Aware that Mr. Camille noticed the markedly different treatment he had received only days prior, Mr. Jackson remarked, "Nobody cares about your Haitian people from the island."

60. On or about January 27, 2016, after a misunderstanding between him and his mother-in-law, Mr. Camille was arrested.

61. Mr. Camille called the Hospital to inform them that he would be absent.

62. All charges were dismissed approximately thirty (30) days later.

63. On or about April 7, 2016, Mr. Warren called Mr. Camille to ask him questions about the arrest from January 2016. Mr. Camille informed him that all of the charges were dropped. Mr. Jackson hostilely responded, "If I have time I will go to the Court and find out."

64. Mr. Jackson continued to harass Mr. Camille saying, "Jail is made for black people."

65. On or about April 8, 2016, Mr. Jackson terminated Mr. Camille, purportedly because of the arrest.

66. It is clear through the Hospital's total disregard and in fact, support of racial discrimination in its facility, that Mr. Camille was terminated because of his race, national origin, and complaints of discrimination.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Hostile Work Environment Based on Race in Violation of Section 1981

67. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 66 with the same force as though separately alleged herein.

68. Section 1981 prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race.

69. Defendant discriminated against Plaintiff by subjecting him to offensive, racially motivated comments based on his race (Black) that were so severe and pervasive that they altered the terms, conditions, or privileges of his employment.

70. As a direct and proximate consequence of Defendant's race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages, including, but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

71. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### SECOND CAUSE OF ACTION
### Discrimination Based on Race in Violation of Section 1981

72. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 71 with the same force as though separately alleged herein.

73. Section 1981 prohibits employers from discharging an employee on the basis of race.

74. Defendant discriminated against Plaintiff by, among other things, terminating his employment due to his race.

75. As a direct and proximate consequence of Defendant's discrimination, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

76. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights under Section 1981, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## THIRD CAUSE OF ACTION
### Retaliation in Violation of Section 1981

77. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 76 with the same force as though separately alleged herein.

78. Section 1981 prohibits employers from retaliating against any employee for making a complaint of racial discrimination.

79. Plaintiff properly complained to Defendant about racially discriminatory comments and conduct.

80. Defendant retaliated against Plaintiff by subjecting him to further offensive, racially motivated harassment, refusing to reprimand the discriminatory behavior, promoting lesser qualified, non-Black employees and ultimately terminating him.

81. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including,

but not limited to, back pay and front pay, as well as emotional distress and suffering, all in amounts to be determined at trial.

82. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## FOURTH CAUSE OF ACTION
### Hostile Work Environment Based on Race and National Origin in Violation of the NYCHRL

83. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 82 with the same force as though separately alleged herein.

84. The NYCHRL prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race or national origin.

85. Defendant subjected Plaintiff to offensive, racially-motivated comments.

86. As a direct and proximate consequence of Defendant's race and national origin discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

87. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## FIFTH CAUSE OF ACTION
### Discrimination Based on Race and National Origin in Violation of the NYCHRL

88. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 87 with the same force as though separately alleged herein.

89. The NYCHRL prohibits employers from discharging any employee because of race or national origin.

90. Defendant discharged Plaintiff because of his race and national origin.

91. As a direct and proximate consequence of Defendant's race and national origin discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

92. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### SIXTH CAUSE OF ACTION
**Retaliation Based on Complaints of Race and National Origin Discrimination in Violation of the NYCHRL**

93. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 92 with the same force as though separately alleged herein.

94. NYCHRL prohibits retaliation by an employer against an employee for complaining of discriminatory practices illegal within the NYCHRL.

95. Plaintiff properly complained to Defendant about discriminatory comments and conduct.

96. Defendant retaliated against Plaintiff by subjecting him to further offensive, racially motivated comments, refusing to reprimand discriminatory behavior, promoting less qualified, non-Black and non-Haitian employees and ultimately terminating him.

97. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial economic damages.

98. Defendant's retaliation toward Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SEVENTH CAUSE OF ACTION
### Discrimination Based on an Arrest in Violation of the NYCHRL

99. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 98 with the same force as though separately alleged herein.

100. NYCHRL prohibits inquiring about an employee's arrest or criminal accusation, and from discharging an employee due to an arrest or criminal accusation.

101. Defendant inquired about Plaintiff's arrest record and terminated him because of it.

102. As a direct and proximate consequence of Defendant's discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages.

103. Defendant's conduct toward Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## EIGHTH CAUSE OF ACTION
### Discrimination Based on an Arrest in Violation of the NYSHRL

104. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 103 with the same force as though separately alleged herein.

105. NYSHRL prohibits an employer from discriminating against an employee because or any arrest or criminal accusation not then pending against that individual which was followed by a termination of that criminal proceeding.

106. Defendant inquired about Plaintiff's arrest record and terminated him because of it after the charge had already been dismissed.

107. As a direct and proximate consequence of Defendant's discrimination, Plaintiff has suffered, and continues to suffer, substantial economic damages.

108. Defendant's conduct toward Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## NINTH CAUSE OF ACTION
### Interference of FMLA Rights in Violation of the FMLA

109. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 108 with the same force as though separately alleged herein.

110. An employee "shall be entitled to a total of 12 workweeks of leave during any 12-month period" in order to "care for …[a] parent [with] a serious health condition."  29 U.S.C. § 2612(a)(1)(C).

111. The FMLA requires employers to provide qualified employees with a general notice of their rights under the FMLA, an employee eligibility notice, and the reason why he was not eligible, among other things.

112. Plaintiff was entitled to FMLA leave, as he had worked for Defendant for over one (1) year and one thousand two hundred fifty (1250) hours, and Defendant employs more than fifty (50) employees.

113. Plaintiff was an eligible employee, as his mother suffered from a serious health condition.

114. Defendant, upon Plaintiff's request for leave to care for his mother, denied Plaintiff leave and never notified Plaintiff of his rights under the FMLA.

14

115. As a result, Plaintiff did not and could not take FMLA leave.

116. Accordingly, Plaintiff is entitled to equitable relief, economic damages, liquidated damages, attorneys' fees and costs, and whatever other remedy the Court deems suitable.

**TENTH CAUSE OF ACTION**
**Retaliation in Violation of FMLA**

117. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 116 with the same force as though separately alleged herein.

118. An employee "shall be entitled to a total of 12 workweeks of leave during any 12-month period" in order to "care for …[a] parent [with] a serious health condition."  29 U.S.C. § 2612(a)(1)(C).

119. Plaintiff was entitled to FMLA leave, as he had worked for Defendant for over one (1) year and one thousand two hundred fifty (1250) hours, and Defendant employs more than fifty (50) employees.

120. Defendant, upon his request for leave to care for his mother, launched a campaign against, ultimately resulting in Defendants terminating Plaintiff's employment.

121. Defendant's decision to terminate Plaintiff his request for FMLA qualifying leave.

122. As a result, Plaintiff is entitled to equitable relief, economic damages, liquidated damages, attorneys' fees and costs, and whatever other remedy the Court deems suitable.

## Request for Relief

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first claim, actual damages to be determined at trial;

B. For the second claim, actual damages to be determined at trial;

C. For the third claim, actual damages to be determined at trial;

D. For the fourth claim, actual damages to be determined at trial;

E. For the fifth claim, actual damages to be determined at trial;

F. For the sixth claim, actual damages to be determined at trial;

G. For the fifth claim, damages to be determined at trial;

H. For the sixth claim, damages to be determined at trial;

I. For the seventh claim, damages to be determined at trial;

J. For the eighth claim, damages to be determined at trial;

K. For the ninth claim, damages to be determined at trial;

L. For the tenth claim, damages to be determined at trial;

M. An award of liquidated damages;

N. An award of compensatory, assumed, and punitive damages;

O. Pre-judgment and post-judgment interest;

P. Attorneys' fees and costs; and

Q. For such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         June 6, 2016                    THE HARMAN FIRM, LLP

                                         By: _____
                                         Walker G. Harman, Jr. [WH-8044]
                                         Edgar M. Rivera [ER-1378]
                                         220 Fifth Avenue, Suite 900
                                         New York, NY 10001
                                         (212) 425-2600
                                         wharman@theharmanfirm.com
                                         erivera@theharmanfirm.com

                                         *Attorneys for Plaintiff*